# 99 DTA 219

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS, HUMACAO Y GUAYAMA**

NYDIA ANDALUZ APONTE
Apelada

v.

DOMINGO HERNANDEZ CAMACHO
Apelante

Núm. KLAN-98-01184

San Juan, Puerto Rico, a 6 de agosto de 1999

Panel integrado por su Presidenta, la Juez Rivera de Martínez
y los Jueces Colón Birriel y Soler Aquino

Colón Birriel, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

## I

Domingo Hernández Camacho *("Hernández Camacho"* o *"el apelante")* apela de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 5 de agosto de 1998, archivada en autos copia de su notificación el 24 del mismo mes y año, en el caso que se indica en el epígrafe. Mediante el dictamen recurrido se le impuso el pago de una pensión alimentaria mensual ascendente a $322.22. El apelante interesa la revocación de la sentencia por entender que el foro recurrido erró al aplicar las guías sobre pensiones

alimentarias y, como consecuencia, impuso una suma mayor a los $250 que eran suficientes para cubrir las necesidades de la menor beneficiaria de la pensión.

Atendido el escrito de apelación, la transcripción de la vista del caso y la comparecencia con motivo de resolución presentada por el representante legal de Lydia Andaluz Aponte ("Andaluz Aponte" o "la apelada"), resolvemos, pero no sin antes esbozar los hechos pertinentes. Veamos.

## II

Carol Hernández Andaluz fue el fruto de la unión entre Lydia Andaluz Aponte y Domingo Hernández Camacho. Nacida el 25 de junio de 1980, la señorita Hernández Andaluz cuenta ahora con 19 años de edad. Al presente, ésta reside con su señora madre, aunque había estado viviendo con su señor padre.

El 10 de octubre de 1997, Andaluz Aponte solicitó al Tribunal de Primera Instancia, Sala Superior de Caguas, que le impusiera a Hernández Camacho una pensión alimentaria a favor de la menor. Se señaló una vista ante la Lcda. Betty Carrasquillo-Rosa, Examinadora de Pensiones Alimentarias, para el 29 de octubre de 1997.

Dicha vista no se pudo celebrar por diferentes motivos: Andaluz Aponte expuso información diferente a la que había plasmado, bajo juramento, en su planilla de información personal y económica y Hernández Camacho no estaba preparado para la vista y no había podido rendir su planilla. Se reseñaló la vista para el 9 de marzo de 1997, instruyendo a ambas partes a comparecer asistidos de abogado, pero no sin antes fijarle a Hernández Camacho una pensión provisional de $250 mensuales. Esto quedó plasmado en un informe el cual fue aprobado y adoptado por la Hon. Rita L. Pruetzel González, el 8 de diciembre de 1997.

Andaluz Aponte preparó una nueva planilla el 19 de febrero de 1998, la cual surge del expediente ante nuestra consideración. El 23 de junio de 1998, se celebró la vista ante la Honorable Juez Rocío del C. Hernández Caussade.

El caso quedó sometido y en la Sentencia que se dictó el 5 de agosto de 1998, se hicieron las siguientes "Determinaciones de Hechos":

"1) Las partes procrearon una (1) hija de nombre: Carol Diane Hernández Andaluz de 17 años de edad.

2) La menor reside en compañía de su madre en una propiedad por la cual no informa un gasto mensual alguno por concepto de alquiler o hipoteca (testimonio en sala).

3) La madre se desempeña como Consultora de Venta y Mercado devengando un ingreso de $11,550 anual más $526.25 de comisiones. (Véase Exhibit I demandado)

4) El padre se desempeña como empleado del correo de los Estados Unidos devengando un ingreso mensual de $2,341.00.

5) El demandado tiene un total de tres (3) hijos menores de edad.

6) Se determinan razonables los gastos reportados por la madre para beneficio de la menor.

7) Se determinan razonables los gastos reportados por el demandante [sic] para su beneficio."

Al exponer sus *"Conclusiones de Derecho"*, el foro recurrido citó diferentes disposiciones estatutarias. Expresó que la cuantía a imponerse por concepto de pensión alimentaria se determina tomando en consideración, entre otros factores, los recursos económicos de los padres y las necesidades de los menores. Código Civil, 31 L.P.R.A. ß 565 y Ley Orgánica de la Administración para el Sustento de Menores *("L.O.A.S. M.")*, 8 L.P.R.A. sec. 518. Añadió que para determinar los recursos económicos del alimentante se toma en consideración, en adición a su ingreso neto disponible, la totalidad del capital o patrimonio (L.O.A.S.M., *supra*) y que se consideran ingresos netos disponibles al alimentante todos aquellos beneficios, ganancias, rendimientos o frutos derivados de sueldos, jornales o compensación por servicios profesionales, y otros, luego de realizarse las deducciones requeridas mandatorias por ley. (L.O.A.S.M., *supra*, a la sec. 501 (9) y (10) ). Manifestó que el uso de las Guías para determinar y modificar pensiones alimenticias [sic] en Puerto Rico, es mandatorio (L.O.A.S.M., *supra*, a la sec. 518) y que la modificación de los acuerdos, sentencias, resoluciones u órdenes sobre pensiones alimentarias solamente procederá en los casos en que ocurran cambios significativos o imprevistos en las circunstancias de alguna de las partes. *Id.*

Hechas sus determinaciones de hechos y conclusiones de derecho, le fijó a Hernández Camacho una obligación alimentaria de $322.22 mensuales.

Es con el propósito de que revisemos dicha sentencia que Hernández Camacho recurre ante nosotros. Señala que el foro recurrido incurrió en el siguiente error:

*"Erró el Honorable Tribunal de Instancia al aplicar las guías mandatorias sobre pensiones alimenticias [sic] e imponer el pago de una pensión de $332.00 cuando la prueba estableció que las necesidades de la menor estaban totalmente cubiertas por la pensión de $250.00 previamente fijada."*

El apelante entiende que la pensión provisional de $250 que se le fijó en 1997 es suficiente para cubrir las necesidades de su hija y proporcional a sus recursos, por lo que esa suma debe ser su obligación mensual.

El apelante nos informa que una pensión fijada mediante el uso de las Guías, como lo fue la pensión en controversia, goza de una presunción de corrección, pero que esta presunción puede ser rebatida. Expresa que se puede controvertir la presunción estableciendo que la totalidad de los gastos de la alimentista son satisfechos con una suma menor que aquella determinada mediante el uso de las Guías.

En lugar de exponer la prueba necesaria para rebatir la presunción de corrección, el apelante meramente nos informa que la última de las dos planillas radicadas por la apelada no contenía información sobre un salario que percibía de *"Sam's Club"* ni sobre los gastos de la menor. Añade que la apelada testificó que la menor no tenía gastos extraordinarios, estudiaba en escuela pública y residía en una casa por la cual no se pagaba suma alguna por lo que no tenía necesidades en cuanto a esos renglones. Señaló también que la apelada había testificado a los efectos de que arrendaba un apartamento de su propiedad en el condominio *"Caguas Tower"* y que convivía con un tal George Sánchez Monson quien el apelante presume debe hacer aportaciones al hogar en que reside su hija. Finalmente, manifiesta que del testimonio de la propia apelada se puede concluir que la pensión provisional de $250 era adecuada.

### III

Como bien expresa el apelante en su escrito ante esta Curia, el deber de proveer alimentos dependerá de las necesidades del alimentista que ha de recibir los alimentos y la capacidad del alimentante, quien los provee. Art. 146 del Código Civil, 31 L.P.R.A. sec. 565. Cuando la obligación de proveer alimentos recaiga sobre dos o más personas, el pago de la pensión se repartirá entre éstos en proporción a sus respectivos caudales. Art. 145 del Código Civil, 31 L.P.R.A. sec. 564; véase también L.O.A.S.M., 8 L.P.R.A. sec. 518.

Para fijar una pensión alimentaria, el Artículo 19 de la L.O.A.S.M., 8 L.P.R.A. sec. 518, exige el uso de las Guías para determinar y modificar pensiones alimenticias [sic] en Puerto Rico. En torno al uso de las Guías, el referido Artículo dispone lo siguiente:

*"Se presumirá que la pensión alimentaria resultante de la aplicación de las guías es justa, adecuada y en el mejor interés del menor. Dicha presunción podrá ser controvertida por cualesquiera de las partes utilizando los criterios establecidos por el Estado Libre Asociado de Puerto Rico."*

Quien intente rebatir la presunción de corrección de la cual goza una pensión fijada mediante el uso de las Guías Mandatorias, tiene el peso de probar el resultado injusto o inadecuado de la cuantía. Deberá presentar evidencia pertinente y usualmente será necesaria prueba pericial para establecer que el resultado de la aplicación de las Guías es injusto. Sarah Torres Peralta, *La Ley Especial de Sustento de Menores de 1994 y el Derecho de Alimentos en Puerto Rico*, San Juan, Publicaciones STP, Inc., Edición Especial 1997, pág. 9.5.

El apelante no nos presentó la prueba necesaria para impugnar la aplicación de las Guías o para demostrar que su resultado es injusto; sus argumentos son insuficientes para rebatir la presunción señalada.

Aunque, como indica el apelante, la última planilla de información personal y económica presentada por la apelada omitió toda información sobre su salario con *"Sam's Club"*, la ausencia fue subsanada por la prueba vertida en el juicio. Allí, la propia apelada testificó en cuanto a los ingresos percibidos de *"Sam's Club"* y se admitió como prueba una carta de este patrono expresando claramente sus ingresos anuales y comisiones. También declaró en cuanto a las sumas recibidas por su participación como mienbro de la Guardia Nacional.

La alegada ausencia de información sobre los gastos de la menor fue refutada cuando la apelada declaró durante la vista. Entre otras cosas, expresó que la menor comenzaría estudios universitarios. No se puede negar que ello conlleva nuevos gastos, propios a dicha etapa de la vida: vestimenta, comidas fuera del hogar, libros, materiales, transportación y otros.

En cuanto al arrendamiento del apartamento en el *"Caguas Tower"*, del testimonio surgió que la apelada no recibía un centavo por motivo de éste. Sobre Georges Sánchez Monson la apelada declaró que era su compañero y que la mayoría del tiempo residía con ella. Del inciso *"I"* de su planilla también surge que convive con ese señor.

Aunque no lo hace dentro de su discusión del error alegadamente cometido por el tribunal de instancia, el apelante trae a nuestra atención el que en la sentencia no se hizo mención de lo siguiente: a) que la apelada había radicado dos planillas, con *"información económica totalmente contradictorias [sic], totalmente falsa"*; b) que en dichas planillas no constaba información sobre el salario de la apelada aunque ésta siempre estuvo empleada; c) que él había presentado una carta del patrono de la apelada con información sobre su salario y una carta de la Asociación de Comerciantes de la Plaza del Mercado donde la apelada mantenía una oficina y que dichos documentos habían sido admitidos en evidencia.

Surge del expediente ante nos que toda la prueba necesaria para que el foro recurrido fijara la pensión alimentaria correctamente surgió de las planillas de información personal y económica y de la prueba oral y documental presentada durante la vista. El tribunal tuvo conocimiento de que la apelada había presentado dos planillas (véase páginas 2-4 de la transcripción de la vista). El testimonio oral, la carta del patrono --admitida en evidencia como Exhibit I del demandado, hoy apelante-- y la planilla de información personal y económica del 19 de febrero de 1998 de la apelante, reflejan la totalidad de los ingresos de la apelada, bien de *"Sam's Club"* como de la Guardia Nacional.

Bien sabido es que meras alegaciones o teorías no constituyen prueba. *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527, 531 (1981). Ante nos, el apelante solamente ha hecho alegaciones. No nos ha traído la prueba necesaria para rebatir la presunción de corrección de la cual goza la pensión fijada.

Es norma bien conocida que un foro apelativo no intervendrá con la apreciación de prueba que haya hecho el tribunal de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Monllor Arzola v. Sociedad Legal de Gananciales,* Opinión del 13 de junio de 1995, **95 J.T.S. 77.** Esto se fundamenta en que es el juzgador de los hechos quien oyó y vio declarar a los testigos y apreció su *"demeanor"*, por lo que es éste quien está en mejor posición de aquilatar la prueba testifical. *López Vicil v. I.T.T. Intermedia,* Opinión del 4 de abril de 1997, **97 J.T.S. 42.**

En mérito de que no advertimos los indicios de pasión, prejuicio, parcialidad o error manifiesto necesarios para nuestra intervención en la determinación del foro de instancia fijando la pensión objeto del recurso, confirmamos la sentencia apelada.

Notifíquese inmediatamente.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General